IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DANIEL PAUL SIEGEL,**

       **Plaintiff,**

  vs.                                      **Civil Action 2:15-cv-403**
                                                        **Judge Graham**
                                                         **Magistrate Judge King**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

<u>**REPORT AND RECOMMENDATION**</u>

**I.**    **Background**

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income. This matter is before the Court for consideration of *Plaintiff's Statement of Specific Errors* ("*Statement of Errors*"), Doc. No. 12, the *Defendant's Brief* in opposition, Doc. No. 17, and *Plaintiff's Reply*, Doc. No. 18.

Plaintiff Daniel Paul Siegel protectively filed his application for benefits on February 29, 2012, alleging that he has been disabled since January 1, 2009. *PAGEID* 87, 236-41. The claim was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on June 6, 2013, at which plaintiff, represented by counsel, appeared and testified, as did Mary Harris, who testified as a vocational expert. *PAGEID* 112. In a

decision dated July 12, 2013, the administrative law judge concluded that plaintiff was not disabled from February 29, 2012, through the date of the administrative decision. *PAGEID* 87-102. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on December 3, 2014. *PAGEID* 48-51.

Plaintiff was 54 years of age on the date of the administrative decision. *See PAGEID* 102, 236. Plaintiff has at least a high school education, is able to communicate in English, and has past relevant work as a computer programmer, delivery driver, and taxi driver. *PAGEID* 100. Plaintiff has not engaged in substantial gainful activity since February 29, 2012, the application date. *PAGEID* 89.

## II.  Administrative Decision

The administrative law judge found that plaintiff's severe impairments consist of coronary artery disease status post myocardial infarction; hyperlipidemia; hypertension; chronic obstructive pulmonary disease; peripheral arterial disease; diabetes mellitus; depressive disorder, not otherwise specified; and an adjustment disorder with anxiety. *PAGEID* 89. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to

> lift and carry 10 pounds occasionally, to sit, with normal breaks, for a total of six of eight hours per day and to stand and walk, with normal breaks, for a total of two of eight hours per day. The claimant can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. The claimant can occasionally stoop. The claimant should

>avoid even moderate exposure to fumes, odors, dusts, gases and poor ventilation. The claimant should avoid exposure to hazards, such as unprotected heights, dangerous machinery and commercial driving. The claimant can perform simple to moderately complex tasks in a relatively static environment, where any changes in routine can be easily explained.

*PAGEID* 92. Although this RFC precludes the performance of plaintiff's past relevant work as a computer programmer, delivery driver, and taxi driver, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff has acquired skills from his past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy, including such representative jobs as general clerk, information clerk, and data entry clerk. *PAGEID* 100-01. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from February 29, 2012, through the date of the administrative decision. *PAGEID* 101.

**III. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y*

3

*of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In his *Statement of Errors*, plaintiff first argues that the administrative law judge erred in evaluating the opinions of state agency reviewing physicians Cynthia Waggoner, Psy.D., and Carl Tishler, Ph.D. *Statement of Errors*, pp. 10-12. Plaintiff argues that, "[a]lthough the ALJ claims to have given 'great weight' to these opinions, the mental limitations contained in the ALJ's RFC assessment are significantly less restrictive than those of indicated [sic] by Drs. Waggoner and Tishler." *Id*. at p. 11. According to plaintiff, the administrative law judge erred in "fail[ing] to explain why he did not incorporate any limitations relating to Plaintiff's ability to maintain attention, concentration and persistence into the RFC despite specific limitations being identified by State agency psychological consultants Drs. Waggoner and Tishler." *Id*. at p. 12.

4

In a related argument, plaintiff contends that the administrative law judge failed to account for all of plaintiff's limitations in the RFC determination. *Statement of Errors*, pp. 6-10. According to plaintiff, the administrative law judge's RFC determination "is woefully inadequate in capturing Plaintiff's significant limitations in concentration, persistence, or pace identified by the State Agency consultants and examining source upon which the ALJ relied, or the ALJ's more general finding of a moderate limitation in this area." *Id*. at p. 10. Citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), plaintiff argues that "this error renders the ALJ's determination of Plaintiff's RFC deficient as despite finding moderate difficulties in concentration, persistence or pace, the ALJ did not incorporate any limitations in this regard in Plaintiff's RFC." *Statement of Errors*, p. 9. Plaintiff specifically argues that "Dr. Waggoner concluded that Plaintiff can 'concentrate for 2 hour periods,'" and the administrative law judge failed to explain his reasoning "for not incorporating this limitation relating to concentration offered by Dr. Waggoner in Plaintiff's RFC." *Id*.

As physicians who did not examine plaintiff but who provided medical opinions in this case, Drs. Waggoner and Tishler are properly classified as nonexamining sources. 20 C.F.R. § 416.902 (A nonexamining source is "a physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case."). An administrative law judge is required to evaluate every medical

5

opinion, regardless of its source.  20 C.F.R. §§ 416.920b, 416.927. When evaluating the opinions of state agency reviewing physicians such as Drs. Waggoner and Tishler, an administrative law judge should consider factors "such as the consultant's medical specialty and expertise in [the Commissioner's] rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions."  20 C.F.R. § 416.927(e)(2).  "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical . . . consultant," "as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources."  *Id*.

Dr. Waggoner reviewed the record on May 21, 2012, and opined that plaintiff has mild restriction of activities of daily living, no difficulties in maintaing social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. *PAGEID* 152.  In her narrative report, Dr. Waggoner explained that plaintiff "can make simple decisions, concentrate for 2 hour periods, and sustain competitive levels of pace, persistence or production." *PAGEID* 156.  With regard to plaintiff's adaptation limitations, Dr. Waggoner opined that, "[d]ue to his depression and anxiety symptoms, [plaintiff] would be limited to a static environment where any changes in routine could be readily explained."  *Id*.

6

Dr. Tishler reviewed the record on September 26, 2012, and opined that plaintiff has mild restriction of activities of daily living, no difficulties in maintaing social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. *PAGEID* 165. In his narrative report, Dr. Tishler explained that, "[d]ue to his depression and anxiety symptoms, [plaintiff] would be limited to 3-4 step tasks, in a static environment where any changes in routine could be easily explained." *PAGEID* 170.

Plaintiff was consultatively evaluated by Scott Lewis Donaldson, Ph.D., on May 2, 2012. *PAGEID* 417-22. Dr. Donaldson assigned a global assessment of functioning ("GAF") score of 50[1] and diagnosed depressive disorder, NOS, and anxiety disorder, NOS. *PAGEID* 420. According to Dr. Donaldson, plaintiff's "ability to understand, remember and carry out instructions may not be limited," *PAGEID* 421, plaintiff's "abilities to maintain attention and concentration as well as his persistence and pace in order to perform simple and multi-step tasks may be limited by symptoms of depressive and anxiety diagnoses," *id.*, and plaintiff's "ability to respond appropriately to supervisors and co-workers may not be limited and/or precipitate work-related disruptions." *PAGEID* 422. However, "[g]iven symptoms of anxiety and

---

[1] "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning . . . ."

*Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 436 n.1 (6th Cir. 2012).

7

depressive disorders, psychological components of chronic pain, fatigue and orthopedic limitations, the claimant's ability to respond appropriately to work pressures in the work setting is likely to be limited and precipitate disruptions in the work-place." *Id*.

The administrative law judge evaluated these opinions as follows:[2]

> In regards to the claimant's mental limitations, the undersigned considered the opinion of consultative examiner Scott Lewis Donaldson, Ph.D. who stated that the claimant "may not be limited" in his ability to understand, remember and carry out instructions; "may be" limited in his ability to perform simple and multi-step tasks; "may not be limited" in his ability to respond appropriately to supervisors and coworkers; and "likely to be limited" in his ability to respond appropriately to work pressures in a work setting. (Exhibit 5F) Obviously, this opinion is quite equivocal and not overtly clear in regards to specific limitations. However, in that it implies little difficulty with task completion, no difficulty in social functioning and some difficulty in the area of concentration, persistence and pace based on difficulty responding to work pressures, the undersigned gives the opinion weight. Such difficulties are corroborated by the consultative examiner's examination of the claimant as well as the record as a whole, in which the claimant regularly presented with few mental health difficulties. Additionally, the opinion is not contradicted by any other examining sources nor by any treating sources.
>
> The state agency experts, Drs. Waggoner and Tishler, both opined that the claimant would work well in a static environment where any changes in routine could be readily explained. (Exhibits 1A and 3A) This statement is consistent with the consultative examiner's opinion that the claimant would have difficulties with increased stress. Further, it is consistent with the record as a whole and uncontradicted by any treating sources. Accordingly, it is given great weight. Dr. Waggoner further opined that the claimant could make simple decisions and sustain competitive levels of pace (Exhibit 1A), while Dr. Tishler

---

[2] The administrative law judge also dedicated more than an entire page of his decision to summarizing Dr. Donaldson's report and analyzing his assessed GAF score of 50. *PAGEID* 95-96.

8

> stated that the claimant could perform three to four step tasks (Exhibit 3A).  In the respect that these statements support a finding that the claimant could perform simple to moderately complex work, they are given significant weight. Further, such suggestion is corroborated by the consultative examiner who found that the claimant would have little difficulty understanding, remembering and carrying out instructions.  Additionally, it, like the remainder of their opinion, is not contradicted by any treating sources.

PAGEID 99-100.  Plaintiff argues that, "[a]lthough the ALJ claims to have given 'great weight' to [the opinions of Drs. Waggoner and Tishler], the mental limitations contained in the ALJ's RFC assessment are significantly less restrictive than those of indicated [sic] by Drs. Waggoner and Tishler.  This discrepancy is never explained or justified by the ALJ in the decision."  *Statement of Errors*, p. 11.  This Court disagrees.

Plaintiff's arguments to the contrary notwithstanding, the administrative law judge did not assign great weight to the opinions of Drs. Waggoner and Tishler *in toto*.  The administrative law judge assigned "great weight" to both Dr. Waggoner's and Dr. Tishler's opinion that plaintiff "would work well in a static environment where any changes in routine could be readily explained" because their opinions were consistent with each other, Dr. Donaldson's opinion, and the record as a whole and were uncontradicted by any treating source. PAGEID 100.  The administrative law judge also recognized that Dr. Waggoner's and Dr. Tishler's opinions differed with regard to plaintiff's limitations in sustained concentration and persistence, and he assigned "significant weight" to the opinions to the extent that their "statements support a finding that the claimant could

9

perform simple to moderately complex work." *Id*. The administrative law judge found that this conclusion is not contradicted by any treating source and "is corroborated by the consultative examiner who found that the claimant would have little difficulty understanding, remembering and carrying out instructions." *Id*. In short, the administrative law judge followed the proper procedures when evaluating Dr. Waggoner's and Dr. Tishler's opinions, he adequately explained the portions of the opinions that he adopted and the reasons for doing so, and his findings enjoy substantial support in the record. The administrative law judge therefore did not err in evaluating the opinions of Drs. Waggoner and Tishler.

Plaintiff disagrees and argues that this case "is identical to the facts of *Ealy* as it relates to the ALJ's failure to incorporate Plaintiff's limitations in concentration, persistence or pace into his RFC." *Statement of Errors*, p. 9. "As in *Ealy*, this error renders the ALJ's determination of Plaintiff's RFC deficient as despite finding moderate difficulties in concentration, persistence or pace, the ALJ did not incorporate any limitations in this regard in Plaintiff's RFC." *Id*.

In *Ealy*, the administrative law judge "relied on the vocational expert's testimony in response to a hypothetical question that stated, in relevant part, 'assume this person is limited to simple, repetitive tasks and instructions in non-public work settings.'" *Ealy*, 594 F.3d at 516-17. The administrative law judge in *Ealy* had expressly found that the plaintiff could work for two-hour segments and that speed of

10

performance could not be critical to his job, but failed to include that limitation in the hypothetical posed to the vocational expert. *Id*. at 516. The United States Court of Appeals for the Sixth Circuit held that the hypothetical posed to the vocational expert, upon whose testimony the administrative law judge relied, failed to adequately describe the claimant's moderate difficulties with regard to concentration, persistence or pace. *See id*.

Here, the administrative law judge found, at steps two and three of the sequential evaluation process, that plaintiff has moderate difficulties with regard to concentration, persistence, or pace. *PAGEID* 91. In making this finding, the administrative law judge relied on the opinions of Drs. Waggoner, Tishler, and Donaldson. *Id*. In determining plaintiff's RFC, the administrative law judge relied on these same opinions to find that plaintiff "can perform simple to moderately complex tasks in a relatively static environment, where any changes in routine can be easily explained." *PAGEID* 92, 99-100. The administrative law judge recognized differences in the opinions and found that this RFC "adequately accounted for the combination of the claimant's symptoms." *PAGEID* 99-100. Unlike the administrative law judge in *Ealy*, *see Ealy*, 594 F.3d at 516 (finding that the administrative law judge's "streamlined hypothetical" to the vocational expert omitted specific limitations to "[two-hour] segments over an eight-hour day where speed was not critical.") (alteration in original), the administrative law judge in this case did not find a specific limitation to two-hour work segments. Although Dr. Waggoner

11

opined that plaintiff "can make simple decisions, concentrate for 2 hour periods, and sustain competitive levels of pace, persistence or production," *PAGEID* 156, the administrative law judge assigned weight to the opinion only to the extent that it supported a "finding that the claimant could perform simple to moderately complex work" and that plaintiff "would work well in a static environment where any changes in routine could be readily explained." *PAGEID* 100. This finding is supported by substantial evidence. In explaining plaintiff's limitations in sustained concentration and persistence, Dr. Tishler opined that plaintiff would be limited to "3-4 step tasks, in a static environment where any changes in routine could be readily explained." *PAGEID* 170. Unlike in *Ealy*, this is not a case where the administrative law judge completely omitted from the RFC determination (or from the hypothetical posed to the vocational expert) a particular limitation actually found by the administrative law judge. Although the administrative law judge did not articulate plaintiff's limitations exactly as he had at steps two and three of the sequential process, he nevertheless considered all the relevant evidence and explained the basis for his findings. Under these circumstances, the Court concludes that the administrative law judge did not err in evaluating plaintiff's RFC. *See Fry v. Comm'r of Soc. Sec.*, No. 1:13-CV-905, 2014 WL 3577439, at *9 (W.D. Mich. July 17, 2014) ("Contrary to Plaintiff's argument, the *Ealy* decision does not stand for the proposition that a finding that a claimant is limited to 'simple work' is somehow legally deficient."); *Singleton v. Comm'r of Soc. Sec.*, No.

1:11-CV-1351, 2013 WL 967602, at *7 (W.D. Mich. Mar. 12, 2013) ("Contrary to Plaintiff's argument, the *Ealy* decision does not stand for the proposition that an RFC determination must include specific limitations regarding concentration, persistence, or pace whenever the ALJ finds limitations in such areas."); *Grim v. Colvin*, No. 5:12-CV-2801, 2013 WL 5316346, at *7 (N.D. Ohio Sept. 23, 2013) ("The Court also agrees with prior decisions of this District that declined to find *Ealy* established a *per se* rule concerning the level of functional limitations that must be ascribed whenever a claimant is determined to have moderate limitations in his or her ability to maintain 'concentration, persistence, or pace.'"); *Clayton v. Astrue*, No. 1:12-CV-79, 2013 WL 427407, at *7 (S.D. Ohio Feb. 1, 2013); *Horsely v. Comm'r of Soc. Sec.*, No. 1:11-CV-703, 2013 WL 55637, at *8 (S.D. Ohio Jan. 3, 2013) ("[S]everal post-*Ealy* decisions declined to adopt a bright line rule that a limitation to 'simple repetitive tasks' in an RFC and hypothetical to the VE is not adequate to address a claimant's moderate impairment as to concentration, persistence, and pace.") *report and recommendation adopted* 2013 WL 980315 (S.D. Ohio Mar. 13, 2013)).

  Plaintiff next argues that the administrative law judge erred in finding that plaintiff acquired work skills from his past relevant work that are transferrable to other occupations. *Statement of Errors*, pp. 12-17. Plaintiff argues that "customer service" and

13

"computer knowledge" (or "use of a keyboard"[3]) are not skills and that the administrative law judge "generally failed to precisely explain which skills transferred to which occupations, and thus his conclusion regarding transferability is not supported by substantial evidence." *Id*. at pp. 13-16.  Plaintiff further argues that the "transferability of skills is a determination entrusted to the ALJ," *id*. at p. 16, and the vocational expert's "testimony was not specific enough to provide the ALJ with sufficient information to reach an informed determination on the issue of transferability."  *Plaintiff's Reply*, p. 2.

> In making a determination as to disability, an ALJ undertakes a five-step sequential evaluation process mandated by regulation. . . .  The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 529 (6th Cir. 1997).  At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003).  In many cases, the Commissioner may carry this burden by applying the medical-vocational grid at 20 C.F.R. Pt. 404, Subpt. P, App. 2, which directs a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on whether the claimant has transferable work skills. *Wright v. Massanari,* 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.,* 893 F.2d 821, 822 (6th Cir. 1990).  However, if a claimant suffers from a limitation not accounted for by the grid, the Commissioner may use the grid as a framework for her decision, but must rely on other evidence to carry her burden. *Id.*  In such a case, the Commissioner may rely on the testimony of a vocational expert to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy. *Heston,* 245 F.3d at 537–

---

[3] The vocational expert referred to the skills of "computer knowledge" and "use of a keyboard" interchangeably.  *See PAGEID* 139-42.  Plaintiff acknowledges that it "appear[s] that the extent of the 'computer knowledge' which was identified as being transferable by the vocational expert was simply the use of a keyboard."  *Statement of Errors*, p. 16.

14

38; *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).

Here, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff acquired skills from his past relevant work: "The vocational expert testified that the claimant's past relevant work as a computer programmer was skilled with a specific vocational preparation (SVP) code of 7 and required the following skills: customer service, computer knowledge and data entry." *PAGEID* 100. The administrative law judge also relied on the testimony of the vocational expert to find that these skills were transferable to the jobs of general clerk, information clerk, and data entry clerk, which could be performed by an individual with the same age, education, past relevant work experience, and RFC as plaintiff and which exist in significant numbers in the national economy. *PAGEID* 101. Plaintiff argues that the vocational expert's testimony is too vague regarding what these skills entail, how these skills transfer, the particular jobs to which each skill transfers, and how the skills require "more than thirty days to learn and give[] Plaintiff a special advantage over other job applicants." *Statement of Errors*, pp. 14-16. The vocational expert's testimony is, however, uncontroverted and constitutes substantial evidence supporting the administrative law judge's Step 5 finding that plaintiff acquired skills in his past relevant work that are transferable to jobs that exist in significant numbers in the national economy. *See Wilson*, 378 F.3d at 548-50 (finding that "testimony of a vocational expert

15

identifying specific jobs available in the regional economy that an individual with the claimant's limitation could perform can constitute substantial evidence supporting an ALJ's finding at step 5 that the claimant can perform other work" and that neither the vocational expert nor the administrative law judge is required to enumerate the transferrable skills); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 856-57 (6th Cir. 2010) ("The VE listed the DOT numbers of four jobs to which [the plaintiff's] skills could transfer and the ALJ was correct to rely on this testimony, given the VE's ability to tailor his findings to an 'individual's particular residual functional capacity.'") (quoting *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009)).

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence.  It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object

to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

September 8, 2015              *s/Norah McCann King*
                               Norah M$^c$Cann King
                               United States Magistrate Judge